IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DONNA ELLIS<br>1801 Laurel Road, #405<br>Lindenwold, NJ 08021 | :<br>:<br>: CIVIL ACTION<br>:<br>: DOCKET NO.:<br>: |
| Plaintiff, | |
| v. | |
| HOUSING AUTHORITY OF THE CITY<br>OF CAMDEN<br>2021 Watson Street, 2nd Floor<br>Camden, NJ 08105 | :<br>:<br>: **JURY TRIAL DEMANDED**<br>: |
| Defendant. | : |

## CIVIL ACTION COMPLAINT

Donna Ellis (*hereinafter* referred to as "Plaintiff," unless indicated otherwise), by and through her undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. This action has been initiated by Plaintiff against the Housing Authority of the City of Camden (*hereinafter* referred to as "Defendant") for violations of the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101 *et. seq.*), the Family and Medical Leave Act ("FMLA" - 29 U.S.C. §2601 *et seq*.), the New Jersey Law Against Discrimination ("NJ LAD"), the New Jersey Family Leave Act ("NJ FLA"), New Jersey Wage Payment Law(s) ("NJ WPL" - N.J.S.A. §§ 34:11-4.2; 34:11-4.4), and applicable New Jersey common law. Plaintiff asserts, *inter alia*, that she was discriminated against and unlawfully terminated by Defendant. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under laws of the United States and seeks redress for violations of federal laws.

3. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant is deemed to reside where it is subjected to personal jurisdiction, rendering Defendant a resident of the District of New Jersey.

5. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing her Charge with the EEOC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

## PARTIES

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the caption.

8. Defendant is a public housing agency in Camden, New Jersey that participates in the Section 8 Housing Choice Voucher, and Public Housing programs, with an address as set forth in the caption.

9. At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the Defendant.

## FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Plaintiff is a 54-year-old female.

12. Plaintiff was employed by Defendant as a Property Manager from in or about October of 2013 through on or about October 22, 2018.

13. During Plaintiff's employment with Defendant, her direct supervisor was Director of Asset Management, Malcolm Isler (*hereinafter* "Isler").

14. During her tenure with Defendant, Plaintiff was a hard-working employee who performed her job well.

### -Disability Discrimination-

15. Toward the end of Plaintiff's tenure with Defendant, she suffered from several disabilities, including a torn meniscus and damaged cartilage which required leg surgery as well as a subsequent work-related injury to her leg.

16. As a result of her aforesaid health conditions, Plaintiff suffered from severe leg pain and weakness, and (at times) was limited in her ability to walk, sit, stand, and work – among other daily life activities.

17. Despite her aforementioned health conditions and limitations, Plaintiff was still able to perform the duties of her job well with Defendant; however, Plaintiff did require reasonable medical accommodations at times (discussed further *infra*).

18. Plaintiff apprised Defendant's management, including but not limited to Isler, of her aforesaid disabilities and need for medical accommodations on several occasions throughout her tenure with Defendant, including by not limited to her need for medical leave.

19. For example, from in or about August of 2017 through in or about October of 2017, Plaintiff required block leave for surgery of her torn meniscus.

20. Following Plaintiff's return to work in or about October of 2017 (from her block medical leave – discussed *supra*), she also required intermittent time off for doctors' appointments and physical therapy (also a reasonable medical accommodation).

21. Shortly after returning from her aforesaid medical leave in October of 2017 and requesting additional reasonable accommodations (intermittent time off), Plaintiff was subjected to hostility and animosity from Isler based on her disabilities, including but not limited to:

   a. Isler required her to provide a doctor's note for each and every appointment that she attended despite the fact that her union only required a note after three days' absence;

   b. Defendant's management, including but not limited to Isler, threatened to not pay Plaintiff while out on leave even though she had donated time or other time to cover her absences;

   c. Prior to Plaintiff's leave, there had always been two to three other employees at her location to assist with work. After Plaintiff returned from leave; Isler removed the other employees, leaving Plaintiff to perform all the work for her location alone despite her lack of mobility; and

   d. Plaintiff's intermittent time off for her serious health conditions consisted of one or two hours here and there during her work schedule that she usually made up by staying later during the same day; however, Defendant improperly deducted the

4

time from her paycheck on several occasions, even though Plaintiff made up the time.[1]

22. Plaintiff's aforesaid serious health conditions were exacerbated by the hostile work environment that she was subjected to by Defendant, which required additional medical treatment and intermittent time off for doctors' appointments.

23. On or about November 6, 2017, Plaintiff sustained a serious work-related injury to her leg, which was reported to Defendant's management as same.

24. Due to her aforesaid leg condition/work-related injury, Plaintiff began to suffer from pain and mobility issues resulting in her having to request worker's compensation benefits and a medical leave of absence to care for and treat her condition.

25. Plaintiff's request for a medical leave of absence due to her aforesaid leg condition was granted and Plaintiff remained out on medical leave from on or about November 6, 2017 through on or about December 16, 2017.

26. Plaintiff was released to return to work on or about December 16, 2017, with a doctor recommendation that she perform only sedentary light desk duty, as her aforementioned leg condition, at times limited her ability to stand and walk.

27. In addition to the reasonable accommodation of sedentary light desk duty, Plaintiff also requested a schedule change and the ability to wear sneakers at work, which aided in her mobility.

---

[1] It is well established that FMLA leave is permitted for whole days, partial days or medical-related breaks under the FMLA. *See e.g. Mora v. Chem-Tronics, Inc.*, 16 F. Supp. 2d 1192 (S.D. Cal. 1998) (Employees may take leave *in any size increments* and employers may account for the leave in the shortest period of time the payroll system uses to calculate absences). *See also Sabbrese v. Lowe's Home Centers, Inc.*, 320 F. Supp. 2d 311 (W.D. Pa. 2004) (explaining that *an employer is prohibited from counting medically necessary breaks against an employee* under the FMLA) (emphasis added); *Collins v. U.S. Playing Card Co.*, 466 F. Supp. 2d 954 (S.D. Ohio 2006) (same).

28. While Defendant allowed Plaintiff to return to work on sedentary light desk duty, Isler denied Plaintiff's requests for a schedule change and the ability to wear sneakers at work.

29. Shortly after returning from medical leave for her aforesaid work-related injury/serious health conditions, Plaintiff was subjected to hostility and animosity from Isler based on her disabilities, including but not limited to:

   a. Making derogatory and condescending comments about Plaintiff's injuries and lack of mobility;

   b. Denying Plaintiff's request to use sneakers and for a schedule change (as discussed *supra*), even though other non-disabled employees were allowed to wear sneakers, and other employees had been allowed schedule changes for personal reasons;

   c. Removing all of the office help that worked Plaintiff's location prior to Plaintiff's return to work and leaving her alone with crutches and a leg brace to run the office, which often times required Plaintiff to work against her limitations of sedentary light desk duty;

   d. Threatening her full-time employee status; and

   e. Issuing her pretextual discipline, including but not limited to a PIP.

30. On several occasions throughout the last two years of her employment with Defendant, Plaintiff verbally expressed her concerns about the aforesaid instances of disability discrimination through Defendant's grievance process.

31. Defendant's management informed Plaintiff that they would review and properly address her concerns and provide her with an additional staff person to assist her; however, instead of investigating and addressing her complaints, Defendant's management continued to

subject her to a hostile work environment, retaliation and disparate treatment, and she was never given additional help.

32. For example, during a union mediation to address Plaintiff's concerns in or about May of 2018, Defendant's Human Resources personnel, John Kostyal (*hereinafter* "Kostyal") threatened to do an audit on Plaintiff's personnel file and informed her that "it might be determined that [Plaintiff] may be needed only part time or not at all."

33. Shortly after the union mediation in or about May of 2018, Kostyal did in fact perform the aforementioned audit on Plaintiff's personnel file and thereafter placed Plaintiff on a PIP for 30 days; however, no response was ever provided by Defendant as to its results.

34. On or about October 12, 2018, Plaintiff received a letter stating that she was being transferred to another one of Defendant's locations – which, upon information and belief, would no longer be under the direction of Defendant beginning in or about May of 2019 – at which time, Plaintiff would likely be subject to a lay-off or termination.

35. On or about October 19, 2018, Plaintiff expressed concerns through Defendant's grievance process that her involuntary transfer was retaliation for complaining about the aforesaid instances of actual, perceived and/or associational disability discrimination, hostile work environment, and retaliation.

36. On or about October 22, 2018, just a few days after Plaintiff's most recent claims of actual, perceived and/or associational disability discrimination, hostile work environment, and retaliation, Plaintiff was abruptly terminated for pretextual reasons.

37. Plaintiff believes and therefore avers that she was really terminated because of her actual, perceived, and/or record of health conditions, in retaliation for requesting accommodations, and/or retaliation for her complaints of discrimination and retaliation.

### -Associational Disability-

38. In addition to Plaintiff's own work-related injuries/serious health conditions and medical leave, both her mother and father suffered from serious health conditions during the last three years of Plaintiff's employment with Defendant, including but not limited to cancer, acute diabetes, kidney failure requiring dialysis, and dementia.

39. Plaintiff's parents' serious health conditions (described *supra*) required Plaintiff to take intermittent leave to care for them before they passed away.

40. Shortly after Plaintiff apprised Isler of her parents' serious health conditions and my need to care for them, Defendant's management subjected Plaintiff to multiple forms of hostility and animosity, including but not limited to:

   a. Isler made derogatory and condescending comments about Plaintiff taking leave, including that Plaintiff "needed to stop playing the victim";

   b. Defendant's management, including but not limited to Isler, threatened to not pay Plaintiff while out on leave even though she had other time to cover her absences;

   c. Isler gave Plaintiff unreasonable timelines to complete her work in an effort to force her to quit or to create a paper trail to justify discipline or termination; and

   d. Plaintiff's intermittent time off for her parents' serious health conditions consisted of one or two hours here and there during her work schedule that she usually made up by staying later during the same day; however, Defendant improperly deducted the time from her paycheck on several occasions, even though Plaintiff made up the time.

41. Plaintiff was terminated by Defendant shortly after requesting and/or utilizing intermittent time off for her parents' medical treatment and doctors' appointments.

42. Plaintiff believes and avers that she was subjected to a hostile work environment, and ultimately terminated by Defendant for: (a) being perceived as distracted for dealing with her parents' health problems in and outside of work; (b) requesting and/or utilizing protected intermittent time off for her parents' medical treatment and doctors' appointments; and/or (c) for other reasons in association with her parents' health problems.

### -Age Discrimination-

43. Separately and apart from the disability discrimination and hostile work environment that Plaintiff was subjected to during her employment with Defendant (discussed *supra*), Plaintiff was also subjected to discrimination based on her age.

44. For example, Isler often made hostile and derogatory comments to Plaintiff regarding her age, including "I need to get rid of all this old dead weight," "I didn't realize I had hired an old broken-down model," and "I need to get rid of all these senior citizens."

45. Plaintiff was treated disparately with respect to work assignments, discipline, and termination contrary to individuals substantially younger than her.

46. After observing and being subjected to age discrimination for months, Plaintiff was abruptly terminated on or about October 22, 2018, for pretextual reasons.

47. Plaintiff believes and avers that she was terminated from her position with Defendant and subjected to a hostile work environment because of her advanced age.

### COUNT I
### Violations of the Americans with Disabilities Act, as Amended ("ADA")
([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation;
[3] Hostile Work Environment; and [4] Failure to Accommodate)

48. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

49. Plaintiff suffered from qualifying health conditions under the ADA which affected her ability (at times) to perform some daily life activities including, but not limited walking, standing, and sitting.

50. Plaintiff kept Defendant's management informed of her serious medical conditions and need for medical treatment and other accommodations.

51. Despite Plaintiff's aforementioned health conditions and limitations, she was still able to perform the duties of her job well with Defendant; however, Plaintiff did require reasonable medical accommodations at times.

52. Plaintiff requested reasonable accommodations from Defendant, including but not limited to intermittent time off from work to care for her health conditions, an additional staff person to assist her, a schedule change, and the ability to wear sneakers at work.

53. While Defendant did grant some of Plaintiff's accommodations, i.e. time off for doctors' appointments and medical treatment, Defendant's management failed to provide Plaintiff with other accommodations from between in or about October 2017 through the time of her termination on or about October 22, 2018, including but not limited to, an additional staff person to assist her, a schedule change, and the ability to wear sneakers at work.

54. On several occasions throughout the last two years of her employment with Defendant, Plaintiff verbally expressed her concerns about the aforesaid instances of disability discrimination and retaliation through Defendant's grievance process.

55. Despite Plaintiff's repeated complaints of disability discrimination, hostile work environment, and retaliation to Defendant's management and Human Resources department, Defendant's management continued to subject Plaintiff to animosity and hostility through pretextual discipline, verbal reprimands, and disparate treatment.

56. Plaintiff was terminated on or about October 22, 2018 (1) in close proximity to her complaints of disability discrimination, hostile work environment, and retaliation; (2) shortly after requesting reasonable medical accommodations; (3) after having been subject to months of discriminatory/retaliatory harassment by Defendant's management; and (4) for completely pretextual reasons.

57. Plaintiff believes and avers that she was terminated for her actual, perceived, and/or record of health conditions, in retaliation for requesting accommodations, and/or in retaliation for her complaints of discrimination and retaliation.

58. These actions as aforesaid constitute unlawful violations of the ADA, as amended.

### COUNT II
### Violation of the New Jersey Law Against Discrimination (NJ LAD)
([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; [3] Hostile Work Environment; and [4] Failure to Accommodate)

59. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

60. Plaintiff reasserts each and every allegation from Count I, as such actions in this case constitute identical violations of the NJ LAD.

### COUNT III
### Common Law Wrongful Discharge
(Public Policy Violation)

61. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

62. Upon information and belief, Plaintiff was terminated in substantial part for making a claim for workers' compensation benefits against Defendant and/or for her work-related injuries.

63. It is against New Jersey's public policy for an employee to be terminated for making a workers' compensation claim or seeking workers' compensation benefits. *Stewart v. County of Hudson*, 2011 N.J. Super. Unpub. LEXIS 1965, 34 (App. Div. July 22, 2011).

64. The mere temporal proximity between Plaintiff's claim for workers' compensation and her termination creates an inference that her termination was in retaliation for making such a claim.

65. Additionally, the hostility and animosity that she was subjected to after she sustained a work-related injury and made a workers' compensation claim creates an inference that her termination was in retaliation for making such a claim.

66. These actions as aforesaid constitute wrongful termination in New Jersey.

## COUNT IV
### Violations of the Family and Medical Leave Act ("FMLA")
### (Retaliation & Interference)

67. Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

68. Plaintiff requested leave for medical reasons (her own and her parents) from Defendant, her employer, with whom she had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

69. Plaintiff had at least 1,250 hours of service with Defendant during her last full year of employment.

70. Defendant is engaged in an industry affecting commerce and employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

71. Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

72. Plaintiff's leave and intermittent time off for both her and her parent's disabilities during the last three years of her employment with Defendant until Plaintiff's termination on or about October 22, 2018, constituted FMLA-qualifying leave.

73. Defendant committed interference and retaliation violations of the FMLA by: (1) terminating Plaintiff for requesting and/or exercising her FMLA rights and/or for taking FMLA-qualifying leave; (2) by considering Plaintiff's FMLA leave needs in making the decision to terminate her; (3) terminating Plaintiff to intimidate her and/or prevent her from taking FMLA-qualifying leave in the future; and/or (4) by making negative comments and/or taking actions towards her that would dissuade a reasonable person from exercising her rights under the FMLA.

74. These actions as aforesaid constitute violations of the FMLA.

## COUNT V
### Violations of the New Jersey Family Leave Act (NJ FLA)
**(Retaliation & Interference)**

75. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

76. Plaintiff was an eligible employee under the definitional terms of the NJ FLA, N.J.S.A. § 34:11B-3(e).

77. Plaintiff requested leave for her parents' serious medical reasons from Defendant, her employer, with whom she had been employed for at least twelve months pursuant to the requirements of N.J.S.A. § 34:11B-3(e).

78. Plaintiff had at least 1,000 hours of service with Defendant during her last full year of employment pursuant to the requirements of N.J.S.A. § 34:11B-3(e).

79. Defendant employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to N.J.S.A. § 34:11B-3(f)(3).

80. Plaintiff was entitled to receive leave pursuant to N.J.S.A. § 34:11B-4 for a total of twelve (12) work weeks of leave on a block or intermittent basis.

81. Plaintiff's intermittent time off for her parents' disabilities during her last three years of her employment with Defendant until her termination on or about October 22, 2018, constituted NJ FLA-qualifying leave.

82. Defendant committed interference and retaliation violations of the NJ FLA by: (1) terminating Plaintiff for requesting and/or exercising her NJ FLA rights and/or for taking NJ FLA-qualifying leave for her parents' serious health conditions ; (2) by considering Plaintiff's NJ FLA leave needs in making the decision to terminate her; (3) terminating Plaintiff to intimidate her and/or prevent her from taking NJ FLA-qualifying leave in the future; and/or (4) by making negative comments and taking actions towards her that would dissuade a reasonable person from exercising her rights under the NJ FLA.

83. These actions as aforesaid constitute violations of the FMLA.

## COUNT VI
### Violations of the Americans with Disabilities Act, as Amended ("ADA")
### (Associational Disability Discrimination)

84. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

85. Plaintiff's parents suffered from qualifying health conditions under the ADA, including but not limited to cancer, acute diabetes, kidney failure requiring dialysis, and dementia.

86. Defendant knew of Plaintiff's parents' disabilities at the time of Plaintiff's termination.

87. Plaintiff was terminated by Defendant in close proximity to requesting and/or utilizing intermittent time off for her parents' medical treatment and doctors' appointments.

88. Upon information and belief, Plaintiff believes and avers that she was subjected to a hostile work environment, and ultimately terminated by Defendant for: (a) being perceived as distracted for dealing with her parents' health problems in and outside of work; (b) requesting and/or utilizing protected intermittent time off for her parents' medical treatment and doctors' appointments (which was covered by the FMLA and/or NJ FLA); and/or (c) for other reasons in association with her parents' health problems.

89. These actions as aforesaid constitute violations of the ADA, as amended.

### COUNT VII
**Violation of the New Jersey Law Against Discrimination (NJ LAD)**
**(Associational Disability Discrimination)**

90. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

91. Plaintiff reasserts each and every allegation from Count VI, as such actions in this case constitute identical violations of the NJ LAD.

### COUNT VIII
**Violation of the Age Discrimination in Employment Act ("ADEA")**
**(Age Discrimination and Hostile Work Environment)**

92. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

93. While employed with Defendant, Plaintiff was subjected to discrimination based on her age by Defendant's management.

94. For example, Plaintiff was treated disparately with respect to discipline and termination contrary to individuals substantially younger than her.

95. By way of further example, Isler often made hostile and derogatory comments to Plaintiff regarding her age, including but not limited to "I need to get rid of all this old dead

weight," "I didn't realize I had hired an old broken-down model," and "I need to get rid of all these senior citizens."

96. Plaintiff believes and avers that she was terminated from her position with Defendant and subjected to a hostile work environment because of her advanced age.

97. These actions as aforesaid constitute unlawful age discrimination under the ADEA.

## COUNT IX
### Violations of the New Jersey Wage Payment Law
### (Improper Deductions and/or Failure to Pay Proper Wages)

98. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

99. During the last three years of Plaintiff's employment with Defendant, Defendant deducted from Plaintiff's pay the intermittent time off she took for her and her parents' serious health conditions (as described *supra*), which consisted of one or two hours here and there during her work schedule.

100. Plaintiff usually made up the intermittent time off that she took for her and her parents' serious health conditions by staying later during that same day; however, Defendant never adjusted the deductions taken or compensated Plaintiff for the hours she worked to make up for the intermittent time she took off.

101. Therefore, Defendant illegally deducted the intermittent time off that Plaintiff took for her and her parents' serious health conditions and/or failed to pay her proper wages for the hours she worked to make up for the intermittent time she took off.

102. These actions as aforesaid constitute violations of the NJ Wage Payment Law.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

B. Plaintiff is to be awarded punitive and/or liquidated damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

C. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

D. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

E. Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

Respectfully submitted,

KARPF, KARPF & CERUTTI, P.C.

By: _____
Ari R. Karpf, Esq.
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: December 28, 2018